UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARIFFO REAL ESTATE          :     CIVIL ACTION
HOLDINGS CO., INC.,          :     No. 05-6153
                             :
        Plaintiff,           :
                             :
             v.              :
                             :
CITY OF PHILADELPHIA,        :
                             :
        Defendant.           :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          May 11, 2007

        Plaintiff Gariffo Real Estate Holding Co., Inc.,
(Gariffo) filed suit in this Court against the City of
Philadelphia (the City) for allegedly demolishing a residential
structure on its property located at 1227 South 19th Street,
Philadelphia, Pennsylvania without first providing it with proper
notice.  Gariffo brings four counts: (1) Violation of the
Fourteenth Amendment pursuant to § 1983 - Defendant deprived
Plaintiff of the use and enjoyment of its property without due
process of law; (2) Violation of the Fourth Amendment pursuant to
§ 1983 - Defendant unreasonably seized Plaintiff's property; (3)
Negligence; and (4) Conversion.  Before the Court is the City's
uncontested motion for summary judgment.


I.    FACTS

        Plaintiff, a Pennsylvania Corporation, was in the

business of buying and selling investment real estate
properties.[1]  Sometime in mid-January, 2003, Gariffo purchased
the property at issue, 1227 South 19th Street for $26,666.66.[2]
At the time of the purchase, the property consisted of a parcel
of land and a structure zoned as a single family residential.
Gariffo dep. 34:7-13.  According to Gariffo's owner, Steven
Gariffo, at the time of the purchase in mid-January 2003, the
structure, designated as Section 8 housing, was occupied by a
renter.  Gariffo dep. 45:7-46:19.  The dweller, however, ceased
paying rent and vacated the property because of some "problem."
According to Garrifo, whose President could not recall what the
"problem" was, this "problem" was supposed to be fixed by its
former property manager.  Due to allegations of theft and
addiction, however, the property manager ceased working for
Gariffo and the "problem" apparently went unrepaired.

While the "problem" may have gone unrepaired, it did
not go unnoticed, at least by the City's Department of License
and Inspections (L&I).  L&I inspects buildings that might be

---

[1] The Court uses the past tense "was", because according to
Gariffo's President, Steven Gariffo, the Corporation no longer
engages in the real estate or any other business.

[2] Gariffo purchased three parcels of land in the same mid-
January transaction for a total of $80,000, however, Plaintiff's
President, Steven Gariffo stated that the $80,000 purchase price
was divided equally among the three properties.  Gariffo dep.
23:1-23.  Only the property located at 1227 South 19th Street is
relevant in this litigation.

dangerous or unsafe in response to complaints received from the general public.  Quinn Declaration ¶ 5.[3]  Sometime in 2003, L&I was informed of an imminently dangerous structure located at 1227 South 19th Street in Philadelphia.  An inspection revealed a partially collapsed outer wall in the back of the house which L&I inspectors concluded posed an imminently dangerous risk of causing the structure to collapse.

What happened next is critical to the case.  L&I contends that, as is its practice, it obtained Plaintiff's address from the records kept with the City's Board of Revision and Taxes (BRT).  Then, on September 23, 2003, the City sent Plaintiff a Violation Notice, at the address obtained from BRT records, informing it that the property was in an imminently dangerous condition and that immediate action had to be taken to demolish or repair the condition.  In addition, the Violation Notice informed Plaintiff that failure to abide by the notice would subject the property to demolition by the City at the owners' expense, and of the available mechanism for appealing the violation.[4]  L&I sent Plaintiff two copies of this notice, one

_____

[3] The averments made in the declaration of Mr. Daniel Quinn, Director of the Contractual Services Unit for L&I, were neither contradicted nor challenged by Plaintiff.

[4] The Violation Notice provided as follows:

This is to inform you that the Department of Licenses and Inspections has inspected the subject premises and declared it **IMMINENTLY DANGEROUS,** in whole or in part, within the meaning of

3

via regular first class mail and one via certified, return
receipt requested mail.  There is no dispute that the address
obtained from BRT records, 703 Iris Lane, Media PA, was
Plaintiff's correct address.  In addition to the Violation Notice
sent via mail, the City also posted an orange "danger notice" on
the front door of the structure, warning of the structure's
imminently dangerous condition and containing a copy of the same
Violation Notice sent to Plaintiff.  Sometime between December
15, 2003 and January 22, 2004, after Plaintiff failed to address
the violation or contest it in any way, the City demolished the
structure.

        Gariffo claimed to be unaware of the demolition until

---

the Philadelphia Property Maintenance Code, Section PM-308.0.
Imminently Dangerous Structures.
You are hereby ordered to **IMMEDIATELY** demolish or repair the said
premises as necessary to correct the violations below.
If you fail to comply with this order, the City may demolish the
structure and stucco the party walls exposed by demolition in
accordance with all provisions of the Code.  You, the owner, will
be billed for all costs incurred including the administrative
fee.  Failure to pay such bill will result in the City filing a
lien in the amount against the title to the premises and/or cotst
and charges being recovered by a civil action brought against
you.
**THIS NOTICE IS FINAL.**  Once the city has begun demolition it will
be necessary to secure legal action for you to halt that
demolition.

If you intend to appeal this violation, you must apply at Boards
Administration, Public Services Concourse, Municipal Services
Building, 1401 John F. Kennedy Blvd., Philadelphia, PA 19102,
within **5** days of the date of this notice.  Telephone inquiries
concerning appeal process can be directed to 215-686-2419.  It is
necessary that you submit a copy of this notice with the appeal.

its President received, at the same address where the Violation
Notices had been sent, three invoices, charging it with the costs
of the demolition.  Gariffo availed itself of the appeals process
set forth in the invoices and, in the end, was not forced to pay
the demolition charges.[5]

Plaintiff has not contended that the City failed to
mail the Notice Violation or that it did not post the orange
danger notice along with the Notice Violation conspicuously at
the property.  Instead, Plaintiff argues that it did not have
actual notice of the pending demolition.

Defendant has moved for summary judgment on all
Plaintiff's claims.  Despite being asked by this Court whether it
would file a response to the City's motion, Plaintiff has chosen
not to oppose, or otherwise respond to, the City's motion for
summary judgment.  Under the Local Rules of Civil Procedure for
the Eastern District of Pennsylvania, a motion for summary
judgment, even if unopposed, must still meet the requirements of
Federal Rule of Civil Procedure 56(c).  See Local R. Civ. P.
7.1(c).  Because it is clear that the City has pointed to an
absence of genuine issue of material fact as to each of
Plaintiff's claims, Defendant's motion for summary judgment will

---

[5]  At his deposition, Steven Gariffo stated that the first
two invoices were "thrown out."  He stated that he did not know
what happened to the third invoice, but was sure that he did not
pay it.  See Gariffo dep. 63:20-65:3.

be granted.


II.  DISCUSSION

      A.   <u>Legal Standard for Summary Judgment</u>

      A court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.  <u>Id.</u> at 248-49.  "In considering the evidence, the court should draw all reasonable inferences against the moving party." <u>El v. Se. Pa. Transp. Auth.</u>, 479 F.3d 232, 238 (3d Cir. 2007).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  <u>Berckeley Inv. Group, Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006).

B.   <u>Plaintiff's § 1983 Claims</u>

"Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of his or her federal rights." <u>Wright v. City of Philadelphia</u>, 409 F.3d 595, 599 (3d Cir. 2005).  The threshold inquiry in a § 1983 suit is whether the Plaintiff has been deprived of a right "secured by the Constitution and the laws." <u>Baker v. McCollan</u>, 443 U.S. 137, 140 (1979).  Absent a violation of a right secured by the Constitution or the laws of the United States, there can be no cause of action under § 1983.  <u>Reichley v. Pennsylvania Dept. of Agriculture</u>, 427 F.3d 236, 244 (3d Cir. 2005) (citing <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)).  For this reason, the Court will first determine if there is a genuine issue of material fact concerning the alleged constitutional violations. In this case, there are two alleged constitutional violations: (1) the City deprived Plaintiff of the use and enjoyment of its property without due process of law in violation of the Fourteenth Amendment, and (2) the City unreasonably seized plaintiff's property in violation of the Fourth Amendment.

As discussed below, Defendant has pointed to an absence of genuine issue of material fact concerning both of the alleged underlying constitutional violations.  Therefore, there can be no cause of action under § 1983 and the City is entitled to summary judgment with respect to these claims.

7

1.   There are no violations of Plaintiff's
     Constitutional Rights.

     a.   Notice was constitutionally adequate under
          the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment
provides that "[n]o state shall . . . deprive any person of . . .
property, without due process of law." U.S. Const. amend. XIV, §
1.  Due process requires "the government to provide 'notice
reasonably calculated, under all the circumstances to apprise
interested parties of the pendency of the action and afford them
an opportunity to present their objections.'" Jones v. Flowers,
126 S.Ct. 1708, 1713-14 (2006) (quoting Mullane v. Central
Hanover Bank & Trust, 339 U.S. 306, 314 (1950)).  Due process
does not require that the "property owner receive actual notice
before the government" may take action that will adversely affect
the owner's interest in the property.  Id. (citing Dusenbery v.
United States, 534 U.S. 161, 170 (2002)).  Notice by mail of the
pending action against the owner's interest in the property, at
least when the notice is not returned as undeliverable, is
generally accepted to satisfy due process requirements.  See
Mennonite Board of Missions v. Adams, 462 U.S. 791, 800 (1983)
("notice by mail or other means as certain to ensure actual
notice is a minimal constitutional precondition" to a proceeding

that affects property rights); <u>Jones</u>, 126 S.Ct. at 1714-21 (reinforcing past holdings that notice is constitutionally sufficient when mailed, at least when the government hears "nothing back indicating that anything had gone awry", but holding that a state must "do a bit more to attempt to let [a property owner know about a pending action] when the notice letter addressed to him is returned as unclaimed.").

In this case, the notice provided by the City was clearly constitutionally adequate.  The City sent the Violation Notice to the address it obtained for Plaintiff from BRT and mailed not one, but two copies of the notice, one by certified, return receipt requested mail and the other by first class mail. Unlike in <u>Jones</u>, there was no indication, such as return of the letter to the City, that the Plaintiff failed to receive notice. In fact, the Plaintiff concedes that the address to which the Violation Notices were sent was Gariffo's correct mailing address at the time the Notice Violations were mailed.  Indeed, after the demolition had occurred, Plaintiff received the invoices of the costs of the demolition at the very same address.

In addition, as further evidence of the City's desire to notify Plaintiff of the violations of the structure on his property, the City took the additional step of posting a bright orange warning notice, along with a copy of the Notice Violation sent to Plaintiff, conspicuously on the front door of the

structure in question.  This notice appears to have been obvious to someone that visited the property, or even to the casual passer-by.  According to the City, this notice stayed affixed to the front door for over a month, a point not contested by Plaintiff.

Under these circumstances, the City certainly took steps that were reasonably calculated to provide Gariffo with actual notice of the violations and pending demolition.  That the Plaintiff claims, without explanation, to have not seen the notices is inapposite when considering the constitutional sufficiency of the notice.  Defendant has pointed to an absence of genuine issue of material fact as to an alleged violation of Plaintiff's due process rights.

> b.   The seizure of Plaintiff's property did not
>      <u>violate the Fourth Amendment.</u>

Plaintiff argues that the City unreasonably seized its property in violation of the Fourth Amendment.  The Fourth Amendment, applicable to the states through the Fourteenth Amendment, protects against unreasonable searches and seizures. It provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or

things to be seized.

U.S. Const. amend. IV.

The Fourth Amendment's protections apply in the civil as well as the criminal context. <u>Soldal v. Cook County, Ill.</u>, 506 U.S. 56, 67 (1992). Seizures of property are subject to Fourth Amendment scrutiny regardless of whether a "search" has taken place. <u>Id.</u>

The City's demolition of the partially collapsed structure located on Plaintiff's property constitutes a seizure within the meaning of the Fourth Amendment. The Supreme Court's holding in <u>Soldal</u> is instructive on this point. There, the Supreme Court, reversing an <u>en banc</u> opinion written by Judge Posner of the Seventh Circuit, addressed whether mobile home owners had their home "seized" within the meaning of the Fourth Amendment when deputy sheriffs assisted the mobile home park manager in physically removing the home from its foundation and towing it to another lot. <u>Id.</u> at 58-59. Explaining that a "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interest in that property," the Court held that the plaintiffs' mobile home was indeed "seized" within the meaning of the Fourth Amendment. <u>Id.</u> at 61 (internal quotations omitted) (citing <u>United States v. Jacobsen</u>, 466 U.S. 109, 113 (1984)).

As in <u>Soldal</u>, in this case the structure located on

Plaintiff's property was clearly "seized" within the meaning of the Fourth Amendment. See also Freeman v. City of Dallas 424 F.3d 642, 647 (5th Cir. 2001) (holding that the City of Dallas' demolition of badly damaged vacant apartment buildings constituted a seizure). However, merely because the structure was seized, does not mean that the City's action violated the Fourth Amendment. See Soldal, 506 U.S. at 62 ("Whether the [Fourth] Amendment was in fact violated is, of course, a different question that requires determining if the seizure was reasonable."). Instead, the Court must look to the fundamental Fourth Amendment question of reasonableness and balance the public and private interests at stake. Id. at 71.

Balancing the relative interests at issue, it is clear that the balance is struck in favor of the City. The Plaintiff retained little or no reasonable expectation of privacy in a dilapidated, uninhabited rental property after L&I provided notice by mail, as well as posted on the structure itself, of its imminently dangerous condition. See Freeman, 242 F.3d at 652. Moreover, the City has a strong interest in ensuring that structures located within City bounds do not pose a threat to the safety of the general public. See Camara v. Municipal Court of San Francisco, 387 U.S. 523, 537 (1967) ("[T]he public interest demands that all dangerous conditions be prevented or abated.").

It is important to note that a seizure in this

12

circumstance is not per se unreasonable without the City first obtaining a warrant.  See Gardner v. McGroarty, 68 Fed. Appx. 307, 312 (3d Cir. 2003); Manganaro v. Reap, 29 Fed. Appx. 859, 861 (3d Cir. 2002); Freeman v. City of Dallas, 242 F.3d 642, (5th Cir. 2001).[6]  Although a warrant may first be necessary before inspectors may enter an inhabited building to inspect suspected violations of municipal housing code, Camara, 387 U.S. at 534, this safeguard is not necessary where, as here, the evidence of

---

[6] It should be noted that there is a circuit split as to whether a warrant is necessarily required before such adverse action may be taken.  See Freeman v. City of Dallas, 242 F.3d 642, (5th Cir. 2001) (holding a warrant is not required to establish the reasonableness of city's seizure of deteriorated vacant apartment building); Samuels v. Meriwether, 94 F.3d 1163, 1168 (8th Cir. 1996) (holding that "an abatement carried out in accordance with procedural due process is reasonable in the absence of any factors that outweigh governmental interests."); Santana v. City of Tulsa, 359 F.3d 1241, 1245 (10th Cir. 2004) (holding that "as long as procedural due process standards are met and no unreasonable municipal actions are shown," no Fourth Amendment violations occurs, even absent a warrant).  But see Conner v. City of Santa Ana, 897 F.2d 1487, 1492 (9th Cir. 1990) (pre-Soldal holding that city officials must obtain a judicial warrant before entering private property, regardless of the reasonableness of warrantless seizure).  Through its reasoning in Gardner, 68 Fed. Appx. at 312, and Manganaro, 29 Fed. Appx. at 861 ("Where a building is condemned for the danger it poses, proper notice is given to the owner, and adequate recourse is given to challenge any action taken by the local government, demolishing that building cannot be ruled unreasonable as a matter of law."), albeit no-precedential, and its reliance on Freeman, 242 F.3d 642 (5th Cir. 2001) and Samuels, 94 F.3d 1163 (8th Cir. 1996), this Court is confident that the Third Circuit will agree with the Fifth, Eighth and Tenth Circuits that a warrant is not required "[w]here a building is seized because of the danger it poses and adequate recourse is provided to challenge any action taken by the local government. . . " Gardner, 68 Fed. Appx. at 312.

the municipal code violations were already obtained by means
unchallenged by the Plaintiff, i.e. the collapsed outer wall was
visible from the street.  <u>Freeman</u>, 242 F.3d at 651.

In any event, because the decision to post the property
as imminently dangerous was consistent with the City's Property
Maintenance Codes, an "emergency" existed as a matter of law.
<u>See</u> <u>Gardner</u>, 68 Fed. Appx. at 312 (holding that because
building's lack of heat rendered it unfit for human habitation
under the local housing codes, an "emergency" existed as a matter
of law which justified the local government's seizure of the
building).  In this case, the "emergency" --- a partially
collapsed outer wall --- presented the type of exigent
circumstances that justified the seizure of the building.  "Where
a building is seized because of the danger it poses and adequate
recourse is provided to challenge any action taken by the local
government, the seizure does not violate the Fourth Amendment."
<u>Gardner</u>, 68 Fed. Appx. at 312 (citing <u>Freeman</u>, 242 F.3d at 651).

At bottom, the Fourth Amendment secures against
"arbitrary invasions by governmental officials."  <u>Camara</u>, 387
U.S. at 528.  Far from acting arbitrarily in this case, the City
followed the published procedures set forth in its City Property
Maintenance Code and acted reasonably under the circumstances.
The seizure of the structure did not run afoul of the Fourth
Amendment.  Therefore, the Defendant has clearly pointed to an

14

absence of genuine issue of material fact as to Plaintiff's §
1983 claim grounded in the Fourth Amendment.

> 2.   Absent a constitutional violation, there is no
>      cause of action under § 1983.

In determining whether a government entity may be held
liable under § 1983, the Supreme Court has made clear that
liability may not be founded under the doctrine of respondeat
superior, but rather only upon evidence that the governmental
entity itself supported a violations of constitutional rights.
Monell v. New York City Department of Social Services, 436 U.S.
658, 691-95 (1978); McGreevy v. Stroup, 413 F.3d 359, 367 (3d
Cir. 2005).  Absent a violation of a right secured by the
Constitution or the laws of the United States, there can be no
cause of action under § 1983.   Reichley v. Pennsylvania Dept. of
Agriculture, 427 F.3d 236, 244 (3d Cir. 2005).  With no genuine
issue of material fact as to the alleged constitutional
violations, there can be no cause of action under § 1983 and the
Court need not consider the City's policy or custom when
enforcing its Property Maintenance Code.

> C.   The City is Immune from Suit with Respect to the State
>      Claims of Negligence and Conversion.

It is well settled that the City and its employees

enjoy absolute immunity from tort liability by virtue of the
Political Subdivision Tort Claims Act except in eight narrowly
construed exceptions.  42 Pa. Cons. Stat. Ann. §§ 8541-8564; <u>See</u>
<u>Finn v. City of Phila.</u>, 664 A.2d 1342, 1343 (Pa. 1995)
(exceptions are to be construed narrowly).  None of the
exceptions apply in this case.[7]  Therefore, Plaintiff's
negligence and conversion claims against the City are barred as a
matter of law.


III. CONCLUSION

          The City has shown an absence of genuine issue of
material fact as to each of Plaintiff's four claims.  As to the
claims grounded in § 1983, because no genuine issue of material
fact exists as to the alleged Fourteenth and Fourth Amendment
violations, there can be no cause of action under § 1983.  The
Plaintiff's state law claims of negligence and conversion are
barred as a matter of law by the Political Subdivision Tort
Claims Act.

          An appropriate Order follows.

---

          [7] The only exception that gives the Court a moment of pause
is the real property exception of § 8542(b).  The real property
exception only applies, however, when the City "possesses" the
real property.  Pennsylvania courts have held that merely because
the local agency has the power and authority to inspect private
property does not mean that it is "in possession" of it within
the meaning of § 8542(b).  <u>See</u> <u>York Redevelopment Authority v.</u>
<u>Keener</u>, 516 A.2d 832 (Pa. Commw. 1986); <u>City of Pittsburgh v.</u>
<u>Estate of Stahlman</u>, 677 A.2d 384 (Pa. Commw. 1996).  Therefore,
the real property exception does not apply in this case.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARIFFO REAL ESTATE          :      CIVIL ACTION
HOLDINGS CO., INC.,          :      No. 05-6153
                             :
        Plaintiff,           :
                             :
            v.               :
                             :
CITY OF PHILADELPHIA,        :
                             :
        Defendant.           :

**O R D E R**

**AND NOW**, this **11th** day of **May, 2007,** it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (doc. no. 9)

is **GRANTED.**


**AND IT IS SO ORDERED.**

**S/Eduardo C. Robreno**
**EDUARDO C. ROBRENO, J.**

17